UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAITH BAPTIST CHURCH, PASTOR
JAMES COOMBS, PASTOR MARTIN
WOODY, K.H. (a minor, by and through next
friend, Dawn Harmon), E.H. (by and through
next friend Donna Harrison), ANDREW
OLAFFSON, and JEFFREY JOHNSON

Case No. 08-11028

Honorable John Corbett O'Meara

      Plaintiffs,

v.

WATERFORD TOWNSHIP, CARL
SOLDEN, individually and in his official
capacity as Waterford Township Supervisor;
DANIEL T. MCCAW, individually and in his
official capacity as Chief of Police, Waterford
Township Police Department; JEFFREY
JAMES, individually and in his official
capacity as Deputy Chief of Police, Waterford
Township Police Department; and WALTER
BEDELL, individually and in his official
capacity as Prosecuting Attorney for Waterford
Township,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, PURSUANT TO FED. R. CIV. P. 12 (c)

      Before the court is Defendants' motion for judgment on the pleadings as to Counts IV, VI, and VII, pursuant to Fed. R. Civ. P. 12(c). Defendants filed the motion on June 3, 2008. Plaintiffs responded on June 24, 2008. A reply was filed by Defendants on July 3, 2008. For the reasons explained below, the court grants Defendants' motion.

## FACTUAL BACKGROUND

      On Wednesday nights, Faith Baptist holds youth services for teens 17 and under. Like

most things associated with teens, things can get loud, especially the music. Such was the case on August 26, 2007. On that date, one of the church's neighbors complained to the Waterford Township Police Department about the noise levels coming out of the church.[1]

Nothing much came out of the complaint until a month and a half later. On Wednesday, October 7, 2007, Waterford Township police officers went to the church. If you ask the Defendants, they entered the church, questioned the pastors and some of the youth who were playing in a band, and in the process, looked at their drivers licences and personal identification. Plaintiffs paint the picture a bit more starkly. They call it a warrantless "raid" in which the police detained the church's worship pastor, Mark Kerr, "interrogated" him, and "seized" his identification.

On Sunday, October 10, 2007, it was much of the same. Defendants again call it questioning. Plaintiffs say that this time, the prosecuting attorney, Walter Bedell, and Waterford Township police officers "rendezvoused" at the church for another raid. This time, they made it to the church's interior chapel, where they interrogated the youth pastor and several teens. (What is unclear is how the police entered the church. Did they knock or did they break down the doors? Did the police ask to come in, or did they merely walk into the church because like most churches, Faith Baptist was open to the public?)

The result of this "intense" investigation was an October 15, 2007 letter from the Waterford Township prosecutor. In it, Bedell informed the church that a criminal complaint for disturbing the peace had been filed and that it could result in a "warrant being issued." Plaintiffs

---

[1] The pleadings are not clear on the music. However, from newspaper accounts of this case it seems the noise came from a live youth band that plays rock and roll music with Christian lyrics.

believe things went a step further two nights later. On Wednesday, October 17, 2007, Bedell allegedly sat in his car and conducted "surveillance." Plaintiffs allege a third raid, this time on Sunday, October 28, 2007 when police officers "stormed" the Sunday service in mid-sermon and removed two members for questioning. Since then, Plaintiffs say Defendants have told them that any time they receive a noise complaint stemming from Faith Baptist's services, Plaintiff's can expect Defendants to again "raid" the church, investigate, and collect evidence.

## LAW AND ANALYSIS

### A. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(c) tests the sufficiency of the complaint. Fed. R. Civ. P. 12(c). In reviewing the matter, the court must treat the motion as it would a 12(b)(6) motion to dismiss. Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir. 2006). The inquiry is limited to whether the challenged pleadings set forth sufficient allegations to make out the elements of a right to relief. Janan v. Trammell, 78 F.3d 55, 558 (6th Cir. 1986). In reviewing this motion, the alleged facts are treated as though they are true, and are viewed in the light most favorable to the Plaintiff. Grindstaff v. Green, 133 F.3d 416, 420 (6th Cir. 1998). However, the court does not have to accept as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688-89.

### B. PLAINTIFF'S CONSPIRACY CLAIMS

Counts IV and VI allege Defendants conspired to deprive the Plaintiffs of their First Amendment rights, pursuant to 42 U.S.C. § 1983. Defendants argue that the counts should dismissed because they are based on the intra-corporate conspiracy doctrine. The doctrine is a Sixth Circuit rule that states in civil conspiracy cases "a corporation cannot conspire with its own

agents or employees."  Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. Of Educ., 926 F.2d 505, 509 (6th Cir. 1991); see also Johnson v. Hills & Dales General Hospital, 40 F.3d 837, 840 (6th Cir. 1994) (according to the intra-corporate conspiracy doctrine, members of the same legal entity cannot conspire with each other if their alleged acts were within the scope of their employment).  The point is that the members are acting as a collective unit, not as separate individuals.  Without separate individuals, there is no one else to conspire with.

Plaintiffs do not believe the intra-corporate conspiracy doctrine applies in this situation.  They argue that the acts alleged were outside the scope of employment and that the "conspiracy" included non-party residents in Waterford Township, and that the intra-corporate conspiracy doctrine does not apply to civil conspiracies brought under 42 U.S.C. § 1983.  Rather, it only applies to civil conspiracies brought under 42 U.S.C. § 1985.  See Kinkus v. Village of Yorkville, 476 F.Supp. 829 (S.D.Ohio 2007) (the court declined to extend the intra-corporate conspiracy doctrine to 42 U.S.C. § 1983 cases, noting that the intra-corporate conspiracy doctrine has only been applied in anti-trust cases and civil rights conspiracy cases).

The first argument is a rather empty one.  The facts involve an investigation into a noise complaint, a potential ordinance violation.  Some might think, rather reasonably, that Defendants were overly aggressive in investigating a simple noise complaint.  That said, it is certainly well within their duties to investigate a citizen's complaint about noise and there is nothing in the record to indicate a violation of Defendants' rights.

Second, although the Southern District of Ohio does not apply the intra-corporate conspiracy doctrine to section 1983 civil conspiracies, my colleagues in the Eastern District of

Michigan certainly do. See Audio Visual Equipment and Supplies v. County of Wayne, 2007 US Dist. LEXIS 86941 at*14-17 (E.D. Mich. 2007)(Cox, J); Turner v. Viviano, 2005 US Dist. LEXIS 35119 at *39-41 (E.D. Mich. 2005)(Cleland, J.). Therefore, the court dismisses Count IV and VI.

## C. QUALIFIED IMMUNITY FOR THE WATERFORD TOWNSHIP PROSECUTOR

Usually, prosecutors have absolute immunity when they are sued in a section 1983 case. Burns v. Reed, 500 U.S. 478, 486 (1991). However, in this instance the prosecutor's actions were investigative, and not courtroom related. Id. at 496. As such, he is entitled to qualified immunity. Id. Slight as it might seem, disturbing the peace is a misdemeanor offense. See Charter Township of Waterford Code of Ordinances, Article V, Section 11-67; M.C.L. 70.10. As such, the prosecutor was investigating an alleged crime, and was within his duties to briefly detain church members so he could investigate the allegations and determine the identities of the people he interviewed.

Although Plaintiffs disagree, the court cannot imagine a credible set of facts or arguments that would show that asking questions and obtaining identification are outside the realm of a criminal investigation, even one as petty and small as a disturbing the peace complaint. In fact, the Supreme Court has held that asking for identification does not in and of itself violate Fourth Amendment search and seizure law. I.N.S. v. Delgado, 466 U.S. 210, 216 (1984). For that matter, neither is asking questions. Hibbel v. Sixth Judicial District Court, 542 U.S. 177, 185 (2004). The only question that remains in this court's mind is the method used to enter the church and whether Bedell and the police violated any Constitutional rights regarding entry into the church. However, that question is mere conjecture on the court's part because the complaint

5

focuses on Bedell's investigation and questioning, and fails to give any clarification regarding the actual entry into the church.

If the prosecutor did not violate clearly established statutory or constitutional rights, then he is entitled to qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). After reviewing the allegations and facts, and construing them in a light most favorable to the Plaintiffs, this court cannot see how Plaintiffs' constitutional rights were violated. Even if the police and prosecutor were overzealous, the allegations are that they asked the Plaintiffs questions relating to a criminal complaint and requested their identification. The fact that it was done on church ground is irrelevant. Therefore, the court dismisses the prosecutor from this case because he is entitled to qualified immunity.

### D. VIOLATION OF EQUAL PROTECTION RIGHTS

Count VII alleges the Defendants violated Plaintiffs' equal protection rights. Specifically, Plaintiffs state that they were denied 14th Amendment equal protection rights when they were discriminated against because of their religious beliefs which meant the Plaintiffs were treated on "less than equal terms." Plaintiffs go on to claim that "[d]efendants targeted Plaintiffs for discriminatory and arbitrary enforcement of their laws on account of Plaintiffs religious practices thereby infringing upon Plaintiffs' fundamental rights."

Defendants point out that the equal protection claim fails to allege facts that Plaintiffs were subjected to discriminatory treatment while other similarly situated individuals were not. For example, the equal protection claim does not allege that Faith Baptist was singled out for enforcement of the noise ordinance as opposed to other churches, or that churches in Waterford Township were being treated differently than other establishments. The court agrees. On its

6

face, the equal protection claims seems as though it is really a freedom of religion claim and it fails to meet the pleading requirements of Fed. R. Civ. P. 8(a).

## **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for judgment on the pleadings, filed on June 3, 2008, is GRANTED, and Counts IV, VI, and VII are DISMISSED. Counts I through III, and V remain. Further, Waterford Township Prosecuting Attorney, Walter Bedell is entitled to qualified immunity and is DISMISSED from this matter.

**SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: September 23, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 23, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager