UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAITH BAPTIST CHURCH, *et al.*,

     Plaintiffs,

                              Case No. 08-11028

v.

                              Hon. John Corbett O'Meara

WATERFORD TOWNSHIP, *et al.,*

     Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Before the court are cross-motions for summary judgment, which have been

fully briefed.  The court heard oral argument on January 16, 2014, and took the

matter under advisement.

**BACKGROUND FACTS**

This case was dismissed by the court in 2010.  Plaintiffs appealed, and the

Sixth Circuit affirmed in part and reversed in part.  This court ruled that Plaintiffs

lacked standing to bring a First Amendment claim, because they did not suffer a

concrete injury.  The Sixth Circuit reversed, finding that Plaintiffs' claim that their

First Amendment rights were "chilled" was sufficient to confer standing.  The

remaining claims on remand are Plaintiffs' First Amendment claims and a claim

for declaratory and injunctive relief against Walter Bedell, the township prosecutor.  The parties have filed cross-motions for summary judgment.

This action arises from Waterford Township's investigation of a citizen's noise complaints against Faith Baptist Church ("FBC").  FBC is a non-denominational Christian congregation located in Waterford, Michigan.  FBC holds Sunday services and Wednesday night youth services, both of which involve singing and playing contemporary religious music.

Timothy Carlson, who lives across the street from the church, has repeatedly complained about the volume of the music coming from the church during rehearsals, services, and concerts.  According to Carlson, he could hear the music inside his home, sometimes until 10 or 11 p.m.  Carlson attempted to resolve the issue with the church, to no avail. Carlson submitted a written complaint to the Waterford Police Department on September 11, 2007, regarding what he believed to be the excessively loud music.

On September 26, 2007, Waterford police were dispatched to Carlson's home.  He complained that he had an ongoing problem with loud music coming from the church, although it had stopped prior to the officer's arrival.  The police apparently did not follow up with Carlson's complaint at this time.

On Sunday, October 7, 2007, Waterford police were again dispatched to

Carlson's home on a loud music complaint involving FBC.  One of the responding

officers, Officer Post, was able to hear music coming from the church while inside

Carlson's house.  The officers went to the church and observed the band practicing

for that evening's services.  They spoke with Pastor Kerr about the noise complaint

and took his name and driver's license number.  According to the police report, the

officers "advised [Kerr] of the noise complaint and he was well aware of the

previous complaints made." The police then left the premises; the band continued

to practice, no one was issued a ticket or was arrested, and services were held that

evening as planned.

Waterford police were called again to FBC on a noise complaint on October

10, 2007.  The officers first went to Carlson's house, then to the church, where

they were met by the township prosecutor, Walter Bedell.  The officers did not

hear loud music when they arrived, but Bedell "advised that he had been there for a

few minutes and that the music was excessive."  The police report states that

Bedell requested that the officers enter the church and identify the band members.

According to the report, "[p]rior to leaving the church Mr. Bedell advised Jason

Combs (youth Pastor) that he would be obtaining misdemeanor warrants for the

band members."

On October 15, 2007, Bedell sent letters to three of the FBC band members

notifying them that the prosecutor's office received a complaint against them.  The

letter stated: "In order to fully investigate these allegations, it will be necessary for

you to call the office located in the 51st District Court . . . to make an appointment

to come in an discuss this matter with a prosecutor.  Your failure to comply with

the request within ten (10) days upon receipt of this letter could result in a warrant

being issued herein."  These band members obtained counsel and refused to be

interviewed.  Bedell took no further action.

On October 28, 2007, Waterford officers were again dispatched to Carlson's

home as a result of a noise complaint.  When the officers arrived, the music coming

from the church had already stopped.  The officers went to the church, identified

the band members, then left.  An unidentified church member videotaped the

police visit, which lasted about ten minutes.  See Pls.' Ex. 8 (transcript).  A person

on the videotape asked the police several times if they were going to order the band

to stop playing music; the officer said no.  He also asked if he was going to get a

ticket; the officer said no.  Once the officer obtained identification from the band

members, he told them they could go because "I don't want to keep you from your

service."  No legal action was taken against the band members.

After the third visit to the church by Waterford officers, the record does not

disclose any further police activity in this regard.  The matter was not resolved,

however. Carlson filed a civil suit against FBC in state court, in February 2008.

Shortly thereafter, in March 2008, FBC filed suit against Waterford Township and

other defendants, alleging constitutional violations. At that time, the police told

Carlson that they would document noise complaints against FBC, but would not

respond to the scene. See James Dep. at 31 ("We know the nature of these

complaints. We know that there are two pending civil cases, and we know that

there is currently no way for this department to resolve the matter. The court

systems will resolve this."). The suit between Carlson and FBC ultimately settled

after FBC agreed to buy Carlson's house.

The claims remaining after remand are: Count I, First Amendment/Free

Exercise; Count II, First Amendment/Freedom of Speech; and Count III, First

Amendment/Freedom of Association. The only remaining plaintiffs are FBC and

Pastor James Combs. The remaining defendants are prosecutor Bedell, Deputy

Chief of Police Jeffrey James, Chief of Police Daniel T. McCaw, Township

Supervisor Carl Solden, and Waterford Township.

## LAW AND ANALYSIS

### I. Claims against James, McCaw, and Solden

Defendants seek dismissal of Plaintiff's claims against Deputy Chief James,

Chief McCaw, and Township Supervisor Solden. There is no allegation that any of

these supervisors were involved in actions that Plaintiffs claim violated their

constitutional rights.

> In Hays v. Jefferson County, 668 F.2d 869 (6th Cir.
> 1982), we held that the § 1983 liability of supervisory
> personnel must be based on more than the right to control
> employees. Section 1983 liability will not be imposed
> solely upon the basis of respondeat superior. There must
> be a showing that the supervisor *encouraged the specific
> incident of misconduct or in some other way directly
> participated in it.* At a minimum, a § 1983 plaintiff must
> show that a supervisory official at *least implicitly
> authorized, approved or knowingly acquiesced in the
> unconstitutional conduct of the offending subordinate*.

Bellamy v. Bradley, 729 F.2d 416, 417 (6th Cir. 1984) (emphasis added).

Plaintiffs do not appear to argue that Chief McCaw and Township

Supervisor Solden should be liable.  Because there are no facts in the record

suggesting that these defendants are liable, the court will dismiss them.

As for Deputy Chief James, Plaintiffs suggest that he is subject to

supervisory liability for allowing Prosecutor Bedell to control the investigation of

the noise complaints against the church.  Plaintiffs are essentially advocating for

respondeat superior liability here.  There is no evidence that James encouraged or

implicitly authorized any specific incident of misconduct.  Accordingly, the

imposition of supervisory liability against James is inappropriate.  The court will

dismiss James as well.

## II.    Claims against Bedell

The court originally granted Bedell's motion for qualified immunity.  The

Sixth Circuit affirmed the dismissal of Plaintiff's damages and official capacity

claims against Bedell, but reversed as to the dismissal of the injunctive and

declaratory relief claims.

The injunctive relief claim against Bedell is moot because he is no longer the

township prosecutor as of April 2013.  See Ford v. Wilder, 469 F.3d 500, 504 (6th

Cir. 2006) ("The test for mootness is whether the relief sought would, if granted,

make a difference to the legal interests of the parties.").  Bedell is no longer in a

position to enforce the noise ordinance against FBC.  Accordingly, the court will

dismiss the injunctive relief claim against Bedell.  Id.

The declaratory judgment claim is not moot, however; the court has the

authority to declare that Bedell violated Plaintiffs' constitutional rights in the past.

See 28 U.S.C. § 2201(a) (the court "may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or

could be sought").  As a practical matter, such a claim is only viable if Waterford

Township is found to be liable for Bedell's actions, because Plaintiffs' damages

claims against Bedell have been dismissed.

## III.    Claims against Waterford Township

Plaintiffs contend that Waterford Township is liable for the actions of Bedell

in investigating the noise violations and for threatening to enforce the noise

ordinance, which they claim is unconstitutional.

### A.  Municipal Liability

Plaintiffs argue that Waterford Township is liable for the actions of Bedell,

who they characterize as a "final decision-maker."  To prevail in a § 1983 suit

against a municipality, a plaintiff must show that the alleged federal right violation

occurred because of a municipal policy or custom.  Monell v. Dep't of Social

Servs., 436 U.S. 658, 694 (1978).

> There are at least four avenues a plaintiff may take to
> prove the existence of a municipality's illegal policy or
> custom. The plaintiff can look to (1) the municipality's
> legislative enactments or official agency policies; (2)
> actions taken by officials with final decision-making
> authority; (3) a policy of inadequate training or
> supervision; or (4) a custom of tolerance or acquiescence
> of federal rights violations.

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiffs argue that Bedell's actions can subject the township to

liability, because he had final decision-making authority with respect to the

investigation of the noise complaints against FBC.  See Pembaur v. City of

Cincinnati, 475 U.S. 469, 481 (1986).  "Municipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy with respect

to the action ordered." Id.  "Authority to make municipal policy may be granted

directly by a legislative enactment or may be delegated by an official who

possesses such authority, and of course, whether an official had final policymaking

authority is a question of state law." Id. at 483.

Plaintiffs contend that township police violated their First Amendment rights

when they entered the church lobby during a service, had band members exit the

service, and obtained the band members' identification.  Plaintiffs argue that when

the officers entered the church, they were acting on Bedell's instructions.  Plaintiffs

also argue that Deputy Chief James referred Carlson to Bedell and allowed Bedell

to be the final decision-maker regarding enforcement of the noise ordinance.

Plaintiffs have not demonstrated, however, that either James or Bedell had

final policymaking authority.  Such an inquiry is "a question of state law."

Pembaur, 475 U.S. at 483. "This includes state and local positive law, such as

statutes, ordinances, and regulations, and less formal sources of law such as local

practice and custom."  Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir.

1993).  Plaintiffs have not cited any legal authority for the proposition that James

or Bedell had final policymaking authority for Waterford Township under

Michigan or local law.  Cf. Pembaur, 475 U.S. at 484-85 (court concluded that

"based upon its examination of Ohio law" the county prosecutor could establish

county policy under appropriate circumstances).  Accordingly, the court finds that

Waterford Township is not liable for the actions of Bedell.

## B.       Constitutionality of Ordinance

Plaintiffs also argue that the noise ordinance that the township sought to

enforce against them was unconstitutionally vague.  "A statute is unconstitutionally

vague if it denies fair notice of the standard of conduct for which the citizen is to

be held accountable, or if it is an unrestricted delegation of power which leaves the

definition of its terms to law enforcement officers."  American-Arab Anti-Discrim.

Comm. v. City of Dearborn, 418 F.3d 600, 608-609 (6th Cir. 2005).

The ordinance provides as follows:

> It is a violation of this Code for any person to disturb the
> public peace and quiet by shouting, whistling, engaging
> in loud, boisterous or vulgar conduct, or by the playing of
> disc or tape players, radios, televisions or other means of
> amplification at a time and place so as to unreasonably
> annoy or disturb the quiet, comfort and repose of persons
> in the vicinity.

Waterford Township Code, § 11-167 (Pl.'s Ex. 11).  Plaintiffs seek damages as

well as declaratory and injunctive relief.  Declaratory and injunctive relief are not

available, however, since the ordinance was amended and the above version is no

longer in effect.  See Brandywine, Inc. v. City of Richmond, 359 F.3d 830, 836 (6th

Cir. 2004) ("We can neither declare unconstitutional nor enjoin the enforcement of

a provision that is no longer in effect."). Plaintiffs may, nonetheless, seek damages

suffered as a result of the threatened enforcement of the former ordinance. Id.

Plaintiffs contend that the ordinance is vague because it does not "provide

specific, objective, or measurable limits on sound that would permit Plaintiffs to

tailor their conduct to conform to the ordinance or that would allow enforcement

officers to determine if the ordinance had been violated." Pl.'s Br. at 13.  The law

does not require that a noise ordinance contain specific, measurable limits on

sound in order to be constitutional.  Indeed, language similar to that contained in

the Waterford ordinance has survived vagueness challenges.  See Gaughan v. City

of Cleveland, 212 Fed. Appx. 405, 409-11 (6th Cir. 2007) (upholding ordinance

prohibiting playing sound "at such volume as to annoy or disturb the quiet, comfort

or repose of neighboring inhabitants"); City of Lansing v. Hartsuff, 213 Mich.

App. 338 (1995) (upholding ordinance which prohibits "disturbing the peace and

quiet by loud and boisterous conduct"); Township of Plymouth v. Hancock, 236

Mich. App. 197, 201 (1999) (upholding ordinance prohibiting disturbing "the

public peace and quiet . . . so as to unreasonably annoy or disturb the quiet,

comfort, and repose of persons in the vicinity").

Courts have construed such statutes to contain a "reasonable person"

standard, which "creates an objective standard against which the ordinance can be

-11-

enforced." Gaughan, 212 Fed. Appx. at 412-13.  See also Hartsuff, 213 Mich. App.

at 346-47 (construing Lansing ordinance under reasonable person standard); World

Wide Street Preachers' Fellowship v. City of Grand Rapids, 2007 WL 1462130 at

*9 (W.D. Mich. May 16, 2007) (upholding ordinance stating "[n]o person shall . . .

[d]isturb the public peace and quiet by loud or boisterous conduct"); American-

Arab Anti-Discrimination Committee v. City of Dearborn, 418 F.3d 600, 610 (6ᵗʰ

Cir. 2005) (finding "breach the peace," defined as "making any noise, disturbance,

trouble, or improper diversion, or any rout or riot, by which the peace and good

order of the city are disturbed" not to be unconstitutionally vague); Kovacs v.

Cooper, 336 U.S. 77, 79 (1949) (holding "loud and raucous" not unconstitutionally

vague); Sharkey's, Inc. v. City of Waukesha, 265 F.Supp. 2d 984, 993-94 (E.D.

Wis. 2003) ("[A]nti-noise ordinances that incorporate a 'reasonable person'

standard have generally withstood constitutional scrutiny.").

Here, the ordinance prohibits "disturb[ing] the public peace and quiet . . . so

as to unreasonably annoy or disturb the quiet, comfort and repose of persons in the

vicinity."  This language survived a vagueness challenge in Hancock, 236 Mich.

App. at 201.  The prohibition against "unreasonably" annoying or disturbing others

provides an objective standard and saves the ordinance from vagueness.

Accordingly, the court will dismiss Plaintiffs' claims based upon the challenge to

the statute.

## **ORDER**

IT IS HEREBY ORDERED that Defendants' motion for summary judgment

is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

Judgment will be entered in favor of Defendants.


                                        s/John Corbett O'Meara
                                        United States District Judge
Date:  January 23, 2014

I hereby certify that a copy of the foregoing document was served upon
counsel of record on this date, January 23, 2014, using the ECF system.


                                        s/William Barkholz
                                        Case Manager